CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
September 22, 2025
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| REBECCA K.,[1] | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 7:24-cv-00416 |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) By: Elizabeth K. Dillon<br>) Chief United States District Judge |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Rebecca K. brought this action for review of the final decision made by defendant, the Commissioner of Social Security (Commissioner), denying her application for Social Security Disability Insurance Benefits. (Compl., Dkt. No. 1.) Pursuant to 28 U.S.C. § 636(b)(1)(B), the court referred the motion to U.S. Magistrate Judge C. Kailani Memmer for a report and recommendation (R&R). On April 3, 2025, the magistrate judge issued her R&R, finding that substantial evidence supported the Commissioner's final decision. (R&R, Dkt. No. 28.) Rebecca filed an objection to the R&R on April 14, 2025 (Obj. to R&R, Dkt. No. 29), and the Commissioner filed a response thereafter (Resp. to Pl.'s Obj. to R&R, Dkt. No. 30).

After de novo review of the pertinent portions of the record, the R&R, and the filings by the parties, in conjunction with the applicable law, the court agrees with the magistrate judge's recommendation. Accordingly, the court will overrule Rebecca's objections, adopt Judge

---

[1] Due to privacy concerns, the court is adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts only use the first name and last initial of the claimant in social security opinions.

Memmer's R&R in full, subject to correction of one harmless clerical error, deny Rebecca's motion for summary judgment, and affirm the Commissioner's final decision.

## I. BACKGROUND

The court adopts the recitation of facts and procedural background as set forth in the report. (R&R 3–13.) Briefly, the Administrative Law Judge (ALJ) determined that Rebecca suffers from the following severe impairments: epilepsy; depressive, bipolar and related disorders; migraine; disorders of the back; and anxiety and obsessive-compulsive disorders. (ALJ Decision 18, Dkt. No. 23-3.) These impairments or combination of impairments, the ALJ reasoned, do not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id*. at 19.)

The ALJ proceeded to conclude that Rebecca retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following restrictions:

> She can only occasionally climb stairs, balance, stoop, kneel, and crouch. She can never climb ladders or crawl. She can stand or walk up to four hours total in an eight-hour day. She must be allowed to occasionally alternate between sitting and standing positions while at the workstation. She can have no more than frequent exposure to extreme cold or heat. She can have no more than occasional exposure to vibration, or to gases, fumes, or pulmonary irritants. She can have no exposure to sustained, loud noises and bright lights. She can have no exposure to workplace hazards such as unprotected heights and dangerous machinery. She can frequently but not always handle objects with the left, non-dominant hand. She is limited to performing only simple, repetitive, and routine tasks. She is limited to only nonproduction-paced tasks as to tempo and capacity (i.e., non-assembly line work). She is limited to maintaining a persistent effort on only routine tasks. She is limited to only occasional interaction with the public, coworkers, and supervisors. She cannot drive a motor vehicle as part of her job duties.

(ALJ Decision 23 (footnote omitted).) The ALJ found that she was unable to perform her past relevant work as radio technician/radar technician but could perform other work that exists in the

national economy such as mail clerk, electronic worker, and marker. (*Id.* at 33–34.) Thus, the ALJ determined that Rebecca was not disabled. (*Id.* at 35.)

On January 17, 2024, Rebecca filed suit in the U.S. District Court for the Eastern District of Virginia to challenge the Commissioner's final decision. (*See* Compl.) The Commissioner moved to transfer the case to this court, with Rebecca's consent, and the court granted that motion on June 28, 2024. (*See* Dkt. No. 14.) By standing order and under authority granted in 28 U.S.C. § 636(b)(1)(B), the court referred the motion to Judge Memmer. After full briefing by both parties (*see* Dkt. Nos. 10, 17), Judge Memmer issued her R&R, recommending that the court affirm the Commissioner's final decision that Rebecca was not disabled, thus denying her application for Social Security Disability Insurance Benefits (*see* R&R). Rebecca filed a timely objection to the R&R (Obj. to R&R), and the Commissioner filed a response thereafter (Resp. to Pl.'s Obj. to R&R). The matter is now ripe for review.

## II. DISCUSSION

### A. Standard of Review

Reviewing courts uphold a Social Security disability benefits determination if: (1) the ALJ applied the correct legal standards, and (2) substantial evidence supports the ALJ's factual findings. *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020) (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shelley C. v. Comm'r of SSA*, 61 F.4th 341, 353 (4th Cir. 2023) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). "In reviewing for substantial evidence, [the court does not] undertake to re-weigh conflicting evidence, make credibility

determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). "Rather, where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, [the court] defer[s] to the ALJ's decision." *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020) (internal quotation marks omitted).

Nonetheless, an "ALJ must adequately explain his reasoning" to allow the court to "engage in a meaningful review." *Woods v. Berryhill*, 888 F.3d 686, 692–93 (4th Cir. 2018), *superseded on other grounds as recognized in Rogers v. Kijakazi*, 62 F.4th 872 (4th Cir. 2023). "Indeed, [Fourth Circuit] precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (internal citation omitted). Instead, "ALJs must 'build an accurate and logical bridge' from the evidence to their conclusions." *Arakas*, 983 F.3d at 95 (citing *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)). If it does so, and the decision is supported by substantial evidence, the ALJ's decision must be upheld. *See id.* at 94; 42 U.S.C. § 405(g).

Where, as here, a matter has been referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1), the court reviews de novo the portions of the report to which a timely objection has been made. *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). "To trigger de novo review, an objecting party 'must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" *Id.* (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). "If a litigant objects only generally, the

4

district court reviews the magistrate's recommendation for clear error only." *Id.* (internal citation omitted).

## B. Rebecca's Objections to the R&R

Rebecca raises four objections to the R&R: (1) the magistrate judge based her R&R on "an incomplete and misleading foundation regarding the proper Standard of Review"; (2) the magistrate judge engaged in an improper post hoc rationalization of the ALJ's rejection of Jo McClain, Psy. D.'s (Dr. McClain) assessment; (3) the R&R may include irrelevant references and analysis from a prior case concerning a plaintiff named "Cassandra"; and (4) the magistrate judge's finding that the ALJ adequately explained rejecting Dr. McClain's opinion fails to fully address Rebecca's claim that the ALJ "cherry-picked" the evidence. (*See* Obj. to R&R.) Each objection is addressed in turn.

### 1. The magistrate judge applied the correct standard of review.

First, Rebecca objects to the magistrate judge's R&R, arguing that it is based on an inaccurate and incomplete understanding of the proper standard of review under 42 U.S.C. § 405(g). While the magistrate judge focused mainly on whether substantial evidence supports the ALJ's decision, Rebecca contends that the court must also determine whether the ALJ applied the correct legal standards. She asserts that the magistrate judge misunderstood this two-prong review and improperly dismissed claims of legal error.

As mentioned above, reviewing courts uphold a Social Security disability benefits determination if: (1) the ALJ applied the correct legal standards, and (2) substantial evidence supports the ALJ's factual findings. *Arakas*, 983 F.3d at 94 (citing 42 U.S.C. § 405(g)).

5

Here, Judge Memmer sets forth the applicable legal standard in great detail, as it pertains to evaluating the ALJ's findings regarding the medical opinion of Dr. McClain.[2] (*See* R&R 13–15.) This includes noting the five factors ALJs must consider in evaluating the persuasiveness of all medical opinions: supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion. (*Id.* at 14 (citing 20 C.F.R. § 404.1520c(b), (c)). The magistrate judge then properly discusses what is required of ALJ's when evaluating the two most important factors: supportability and consistency. (*Id.* at 14–15.) Once she notes that legal framework—providing citations to the regulations—she applies it to the ALJ's factual findings as it pertains to the medical opinion of Dr. McClain. (*Id.* at 15–20.) She then concludes by stating: "In review of the ALJ's decision, I find the ALJ complied with the applicable regulations when evaluating Dr. McClain's opinion." (*Id.* at 20.)

Rebecca argues that the "Report and Recommendation tendered by U.S. Magistrate Judge Memmer in the case at bar focuses almost exclusively on the issue of substantial evidence, even though Plaintiff clearly argued legal error due to the ALJ's failure to comply with the regulations." (Obj. to R&R 3.) It is unclear to the court what Rebecca alleges is the incorrect legal standard that was applied or the correct legal standard that was ignored. Judge Memmer set forth the standard of review, cited to controlling regulations, applied the controlling law to the ALJ's findings regarding Dr. McClain's opinion, and concluded that the ALJ was in compliance with the applicable regulations. Without providing more specificity in Rebecca's objection, the court construes this as a general objection to the magistrate judge's standard of review used in her R&R. "If a litigant objects only generally, the district court reviews the magistrate's

---

[2] In Rebecca's summary judgment brief, she presented only one issue for review: "The ALJ did not provide a proper supportability and consistency analysis of the opinion proffered by State agency psychological consultant, Jo McClain, Psy. D. as required by 20 C.F.R. § 404.1520c(b)(2), depriving the ALJ's decision of substantial evidence and frustrating meaningful review." (Dkt. No. 10.)

recommendation for clear error only." *Elijah*, 66 F.4th at 460; see also *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) (finding de novo review to be "unnecessary . . . when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations"). For the foregoing reasons, and after reviewing the record, applicable law, and the R&R, the court finds no clear error and thus overrules Rebecca's first objection.[3]

### 2. The magistrate judge did not engage in a post hoc rationalization of the evidence.

In Rebecca's second objection to the R&R, she argues that "[r]ather than recognizing the merits of [her] argument in the context of what the ALJ himself actually said, the U.S. Magistrate Judge engages in a post hoc analysis of the evidence." (Obj. to R&R 3.) She contends that much of the analysis contained in the R&R relies on evidence the ALJ did not reference as a basis for his findings. (*Id.* at 4.) According to Rebecca, the magistrate judge improperly engaged in "combing [] the record to craft ways in which the factors of supportability and consistency *could have been* applied to the evidence," which she argues is not permitted. (*Id.* (emphasis in original).)

As with her first objection, this argument lacks specificity. Rebecca argues that "[m]uch of the analysis contained in the Report and Recommendation relies on evidence that the ALJ

---

[3] Even if the court were to conduct a de novo review of the record to determine whether the ALJ evaluated Dr. McClain's medical opinion under the correct legal framework, it would still conclude that the proper legal standards were applied. Contrary to her assertion that the "ALJ's decision did not specify what [] legal standards were relied on in reaching the ALJ's conclusion," a plain reading of the decision shows otherwise. The ALJ explicitly outlined the legal standards guiding his factual determinations throughout the record. Specifically, the ALJ cited the five-step sequential process under 20 C.F.R. § 404.1520(a), symptom assessment under § 404.1529, the evaluation of medical opinions—including Dr. McClain's—under § 404.1520c, and more. (*See* ALJ Decision 15–35.) While Rebecca disputes the ALJ's factual findings regarding Dr. McClain's opinion, the court finds no indication in the record that the ALJ used and incorrect legal standard.
    Insofar as Rebecca intends to object to the R&R's supportability and consistency analysis, the court conducts a de novo review of the record and addresses those issues in detail below. (*See infra* Sec.II.B.4.)

7

himself did not point to as a basis for his findings." (Obj. to R&R 4.) However, she fails to identify a single piece of evidence that Judge Memmer allegedly relied upon in the R&R but that was not cited by the ALJ in his decision. Without such detail, the court is left to speculate as to which portions of the R&R Rebecca believes constitute post hoc rationalization.

"District courts are not expected to relitigate entire cases to determine the basis of a litigant's objection." *Elijah*, 66 F.4th at 460 (citing *Midgette*, 478 F.3d at 622). The Fourth Circuit has made clear that "[i]f the grounds for objection are clear, district court judges must consider them de novo[.]" *Id.* However, "[i]f a litigant objects only generally, the district court reviews the magistrate's recommendation for clear error only." *Elijah*, 66 F.4th at 460. Because Rebecca offers no clarity as to what evidence allegedly exceeds the scope of the ALJ's decision, the court evaluates this objection under the clear error standard.

After reviewing the record, applicable law, and the R&R, the court finds no clear error and thus overrules Rebecca's second objection.

### 3. The magistrate judge once mistakenly referring to plaintiff as "Cassandra" is a harmless error.

In Rebecca's third objection to the R&R, she contends that the magistrate judge "appears to have used a template from a prior case about a Plaintiff named 'Cassandra.'" (Obj. to R&R 5.) She argues that the R&R "may contain other statements about the analysis in the 'Cassandra' case that does not apply to the case at bar." (*Id.*)

The court agrees that the R&R mistakenly refers to Rebecca as "Cassandra" once in boilerplate language outlining a legal standard.[4] (R&R 13.) However, this error was harmless,

---

[4] For context, the section containing the mistake discusses the amendments to the Social Security regulations in 2017. The R&R notes:

> Effective March 27, 2017, numerous social security regulations and social security rulings ("SSRs") were amended or superseded, making the new regulations applicable to claims filed on or after March 27, 2017. *See Revisions*

8

as it did not affect any of the legal analysis contained in the R&R. *See e.g.*, *Al-Ami'n v. Clarke*, No. 2:13CV167, 2014 WL 549326, at *2 n.2 (E.D. Va. Feb. 11, 2014) (finding that the magistrate judge's two mistaken references to petitioner by the wrong name in boilerplate language did not affect the substance of the legal analysis and, therefore, was harmless error). Accordingly, Rebecca's objection on this ground will also be overruled, and the R&R will be adopted in full, subject to correction of this harmless clerical error.

   4. **The ALJ did not "cherry-pick" mental health evidence and provided a logical bridge from the evidence to his conclusion that Dr. McClain's opinion was unpersuasive.**

In Rebecca's fourth objection to the R&R, she argues that the "Report and Recommendation does not adequately address [her] arguments that the ALJ erred in relying upon 'cherry-picked' normal mental examination findings" in discrediting Dr. McClain's opinion. (Obj. to R&R 5.) She points to evidence in the record documenting "observations of abnormal clinical findings such as a flat affect, an anxious mood, and a reactive affect." (*Id.*) Rebecca also emphasizes that, following her service in the Navy, she was awarded "100% service-connected disability with diagnoses including major depressive disorder, recurrent, moderate; generalized anxiety disorder; obsessive-compulsive disorder; and post-traumatic stress disorder." (*Id.*) As such, she contends that the ALJ fails to provide "the necessary logical bridge between

---

*to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017), *corrected by* 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017). Because Cassandra's claims were filed after March 27, 2017, the ALJ was required to evaluate the application under 20 C.F.R. § 404.1520c.

(R&R 13–14.) This is nothing more than boilerplate language that mistakenly uses "Cassandra" instead of Rebecca. The court will adopt the R&R in full, subject to correction of this harmless clerical error by replacing the name Cassandra with Rebecca.

9

the evidence and [the ALJ's] conclusion that the opinion of Dr. McClain is unpersuasive."[5] (*Id.* at 6.) For the reasons that follow, the court disagrees.

Because Rebecca's objection specifically challenges the medical opinion of Dr. McClain, the court will conduct a de novo review of the ALJ's findings regarding Dr. McClain's opinion. This review involves examining the record to determine whether the ALJ's conclusion that Dr. McClain's assessment was unpersuasive is supported by substantial evidence. In doing so, the court will also address Rebecca's concerns about the ALJ "cherry-picking" medical evidence and failing to provide a "logical bridge" for the evidence to his conclusion.

### a. Legal standard

There are five factors for an ALJ to consider when determining the persuasiveness of a medical opinion: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c. Supportability and consistency are the two "most important factors" for an ALJ to consider when determining "how persuasive [they] find a medical source's medical opinions . . . to be." 20 C.F.R. § 404.1520c(b)(2). "Supportability is the degree to which a provider supports [his or her] opinion with relevant, objective medical evidence and explanation, and consistency is the degree to which a provider's opinion is consistent with the evidence of other medical and non-medical sources in the record." *Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023) (citing 20 C.F.R. § 404.1520c(c)(1)–(2)). The ALJ must explain in his decision how he considered the supportability and consistency

---

[5] The court notes that, unlike Rebecca's first and second objections, this objection is stated with sufficient specificity to warrant de novo review, as it clearly articulates the grounds for disagreement with the R&R. *See Elijah*, 66 F.4th at 460.

10

factors for each medical opinion in the record.  20 C.F.R. § 416.920c(b)(2).  The ALJ may, but is not required to, explain how he considered the other three factors.  *Id.*

The ALJ's decision "must build an accurate and logical bridge" from the evidence to his conclusion about a medical opinion.  *Arakas*, 983 F.3d at 95.  The ALJ "has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)). When the court is "'left to guess' as to how the ALJ reached [his] evaluation of the conflicting medical opinions in light of the evidence of record," then it cannot "review the reasonableness of [his] conclusions" and remand is necessary.  *Testamark v. Berryhill*, 736 F. App'x 395, 398 (4th Cir. 2018).

### b. The ALJ's assessment of Dr. McClain's opinion

On March 16, 2021, Rebecca saw psychologist Dr. McClain in connection with her disability claim.  (*See* McClain Op. 39–47, Dkt. No. 23-4.)  Dr. McClain identified the following mental impairments: mild limitation understanding, remembering, or applying information; moderate limitation interacting with others; moderate limitation concentrating, persisting, or maintaining pace; and no limitation adapting or managing oneself.  (*Id.* at 42.)  In her mental RFC assessment, Dr. McClain opined that Rebecca is limited in understanding and remembering complex or detailed instructions but can follow simple one and two-step instructions, can maintain concentration and attention for at least 3.5-hour segments before needing a break, can frequently make decisions, but has a low frustration tolerance and can only work 30 hours in a 40-hour workweek.  (*Id.* at 44–45.)

11

The ALJ found Dr. McClain's findings unpersuasive and provided the following rationale:

> Dr. McClain's assessment is not well-supported. She appears to have relied on very limited evidence, namely, mental health records from September, October, and November 2020. Additionally, her assessment that claimant can only understand and remember simple, one and two-step instructions is inconsistent with her finding of only mild limitation in understanding, remembering, or applying information. It is also inconsistent with other evidence. Neurology records, for example, show claimant has normal memory and can follow multi-step commands (B12F/3-4; B21F/9-10). Claimant's mental health records also show evidence of intact attention/concentration and indicate that she was even considering taking online college classes (B13F/43, 59; B21F/18). Her statement regarding claimant's ability to maintain attention and concentration is not expressed as the most the claimant can do. Additionally, that statement, along with her statement that claimant can only work 30 hours, appears to be speculative. Regarding working 30 hours, that assessment is inconsistent with her finding that claimant had no limitation in adapting or managing oneself and is inconsistent with her other findings of moderate limitation. Claimant's records document some low frustration tolerance, but in light of claimant's very limited mental health treatment, it does not appear that this would cause her to be unable to work a full workweek. Therefore, Dr. McClain's findings are unpersuasive.

(ALJ Decision at 30.)

c. *Supportability*

The court finds that the ALJ adequately evaluated whether Dr. McClain's opinion was supported by relevant, objective medical evidence and adequate explanation. The ALJ explicitly stated that "Dr. McClain's assessment is not well-supported[,]" observing that she relied on only three months of mental health records from September to November 2020. (ALJ Decision at 30.) Additionally, the ALJ found that Dr. McClain's statements regarding Rebecca's ability to maintain attention and concentration, as well as the 30-hour work week limitation, "appear[ed] to be speculative." (*Id.*) These findings directly address the supportability factor, as they highlight the lack of objective evidence and clear reasoning behind Dr. McClain's conclusions. *See e.g.*,

*Miller v. Comm'r of Soc. Sec. Admin.*, No. CV 9:20-04205-MHC, 2022 WL 11115318, at *11 n.9 (D.S.C. Mar. 9, 2022) (noting that although an ALJ did not explicitly use the term "supportability," it was evident that the ALJ considered supportability in finding a doctor's opinion unpersuasive because it was speculative).

The ALJ's decision must be read, and considered, in its entirety. *Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018). In context, the decision contains a detailed discussion of Rebecca's lengthy medical history, including a prior ALJ decision from April 2020 denying disability benefits. (*See generally* ALJ Decision.) The court is not "left to guess" why the ALJ found Dr. McClain's opinion unsupported, given her reference to only three consecutive months of medical records in 2020, and the lack of explanation tying her conclusions to objective evidence. Accordingly, the court finds that the ALJ properly addressed the supportability factor.[6]

   d. Consistency

The court finds that the ALJ adequately considered whether Dr. McClain's opinion was consistent with the broader medical and non-medical evidence. The ALJ identified several inconsistencies within Dr. McClain's assessment. (*See* ALJ Decision at 30.) For example, Dr. McClain opined that that Rebecca can only understand and remember simple, one and two-step instructions. However, this assessment conflicts with her own finding that Rebecca had only a mild limitation in understanding, remembering, or applying information. The ALJ noted that it is also inconsistent with other evidence in the record, such as neurology records documenting

---

[6] Although the court acknowledges that it is not it's job to "fill in the blanks for the ALJ," *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 662 (4th Cir. 2017), it is difficult to imagine what more the ALJ could have said regarding supportability. The only objective medical evidence specifically referenced in Dr. McClain's report that pertains to prior mental health evaluations of Rebecca comes from September, October, and November of 2020—and even that discussion is minimal. (McClain Med. Op 41.) Nor did Dr. McClain offer any meaningful explanation of how she arrived at her conclusions. (*See generally id.*)

13

normal memory and the ability to follow multi-step commands (Dkt. No. 23-10, at 58–59; Dkt. No. 23-12, at 427–28), and mental health records noting intact attention and concentration (Dkt. No. 23-11, at 44; Dkt. No. 23-12, at 436). The ALJ also found the one and two-step instruction limitation inconsistent with Rebecca's reported plans to take online college classes.

Additionally, the ALJ found Dr. McClain's opinion that Rebecca could only work 30 hours per week inconsistent with her own finding of no limitation in adapting or managing oneself, and with her other findings of only moderate mental limitations. While the ALJ acknowledged Rebecca's records note some low frustration tolerance, the ALJ, considering Rebecca's limited mental health treatment, found this unlikely to preclude full-time work.

Moreover, the ALJ's finding that Dr. McClain's assessment is unpersuasive must be read in the context of the entire decision. *See Keene*, 732 F. App'x at 177. In the seven pages preceding the ALJ's discussion of Dr. McClain's assessment, the ALJ details Rebecca's alleged mental impairments, including her symptoms of "excessive worry, anxiety, panic attacks, checking behaviors, mood swings, withdrawal to cope with stressful situations, feeling overwhelmed, depressed mood, crying spells, sleep disturbance, feelings of hopelessness and guilt, and irritability." (ALJ Decision 27.) The ALJ then notes that "there is no evidence of cognitive rehabilitation, nor is there evidence of psychiatric hospitalization or similar intensive treatment for psychological complaints." (*Id.*) He goes on to find that Rebecca's "mental status exams and activities as reported in her records suggest she has adequate cognitive and adaptive abilities to maintain persistence to perform routine tasks, perform nonproduction-paced tasks, and maintain adequate concentration/attention to carry out and stay on task to complete simple, repetitive, and routine tasks." (*Id.* at 28.) He cites to neurological exams, primary care records, and other mental health provider exams that show evidence of the ability to follow multistep

14

commands, normal memory, intact attention/concentration, goal-oriented thoughts, and good judgment. (*Id.* (citing to record evidence).) The "ALJ need only review medical evidence once in his decision." *McCartney v. Apfel*, 28 F. App'x 277, 279 (4th Cir. 2002). Therefore, the court considers all of this information when assessing the ALJ's findings regarding the consistency of Dr. McClain's assessment.

Considering the decision as a whole, the court can "build an accurate and logical bridge" from the evidence discussed in the ALJ's decision to his conclusion that Dr. McClain's assessment was inconsistent with other parts of the record. *Arakas*, 983 F.3d at 95. Accordingly, the court finds that the ALJ's consistency analysis of Dr. McClain's opinion was legally sufficient and supported by substantial evidence. *See Ronald P. v. O'Malley*, 2024 WL 1328235, at *2–3 (W.D.Va., March 27, 2024) (finding an ALJ's consistency analysis sufficient where the ALJ built an accurate and logical bridge from the record evidence to the conclusion that a medical opinion was inconsistent with the record).

    e.  *The ALJ did not "cherry-pick" medical evidence.*

To the extent Rebecca argues the ALJ "cherry-picked" normal mental examination findings to support his conclusions, the court disagrees. In her objection, Rebecca points to the medical evidence noting a "flat affect, an anxious mood, and a reactive affect," suggesting that these findings were not adequately addressed by the ALJ. However, as previously discussed, the ALJ thoroughly considered Rebecca's mental health complaints. Notably, the ALJ explicitly mentions her "anxious mood" in the decision. (ALJ Decision 22.) While the ALJ may not have specifically mentioned "flat affect" and "reactive affect," he does cite the medical records containing those observations. (*Id.* at 25 (citing to medical records).) Furthermore, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid*

15

*v. Comm'r of Soc. Sec. Admin.*, 769 F.3d 861, 865 (4th Cir. 2014) (internal citation omitted); *see also Blackwell v. Colvin*, No. 1:14-cv-00085, 2014 WL 7339132, at *6 (W.D.N.C. Dec. 23, 2014) (cleaned up) ("An ALJ is not tasked with the impossible burden of mentioning every piece of evidence that may be placed into the Administrative Record.")

Additionally, the ALJ stated that his findings were made "after careful consideration of the entire record" (ALJ Decision 23) and that he considered the "totality of the record" (*id.* at 33), which indicates that he considered the medical evidence Rebecca references in her objection. Absent evidence to the contrary, the court takes the ALJ at his word. *Reid*, 769 F.3d at 865 (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir.2005)). Therefore, Rebecca's objection that the ALJ "cherry-picked" favorable mental health evidence is overruled.

To the extent that Rebecca argues that the ALJ did not consider her 100% VA disability rating, the court finds this argument unfounded. The ALJ explicitly mentions the VA disability rating in his decision. (ALJ Decision 24.) Furthermore, the ALJ discusses a prior 2020 unfavorable decision that denied Rebecca disability benefits (*id.* at 18–19), which also considered the VA records pertaining to its separate disability rating determination (*see generally* Dkt. No. 23-4, 2–21). The applicable regulation, 20 C.F.R. § 404.1504, outlines how decisions by other governmental agencies should be considered:

> Other governmental agencies and nongovernmental entities—such as the Department of Veterans Affairs, the Department of Defense, the Department of Labor, the Office of Personnel Management, State agencies, and private insurers—make disability, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. Therefore, in claims filed (*see* § 404.614) on or after March 27, 2017, we will not provide any analysis in our determination or

16

> decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4)

Upon review of the evidence in the record, the court finds that the ALJ properly considered the VA records and discussed them in his decision. As stated above, the ALJ made his findings "after careful consideration of the entire record" (ALJ Decision 23) and he considered the "totality of the record" (*id.* at 33), meaning he considered the VA records. Absent evidence to the contrary, the court takes the ALJ at his word. *Reid*, 769 F.3d at 865 (citing *Hackett*, 395 F.3d at 1173). Therefore, Rebecca's objection that the ALJ failed to adequately consider the evidence surrounding her 100% VA disability rating is overruled.

Rebecca also notes the magistrate judge's acknowledgement "that the ALJ could have provided a lengthier analysis of Dr. McClain's opinion." (Obj. to R&R 5.) However, that does not justify remanding the matter back to the Commissioner. *See Hillman v. Kijakazi*, No. 1:20-cv-00237, 2021 WL 3824685, at *6 (W.D.N.C. Aug. 26, 2021) (noting that although the ALJ's analysis could have been more descriptive, it adequately addressed consistency). "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid,* 769 F.3d at 865 (internal citation omitted). Accordingly, the court finds that the ALJ's supportability and consistency analysis of Dr. McClain's opinion was legally sufficient and supported by substantial evidence. *See Ronald P. v. O'Malley*, 2024 WL 1328235, at *2–3 (W.D.Va., March 27, 2024) (finding an ALJ's consistency analysis sufficient where the ALJ built an accurate and logical bridge from the record evidence to the conclusion that a medical opinion was inconsistent with the record).

In sum, the ALJ built an "accurate and logical bridge" from the evidence in the record to his conclusion that Dr. McClain's assessment of Rebecca is unpersuasive. *Arakas*, 983 F.3d at 95. The ALJ properly applied the correct legal standards, and his findings are supported by substantial evidence. Accordingly, the ALJ's decision to deny Rebecca social security benefits will be upheld.[7]

### III. CONCLUSION AND ORDER

For the foregoing reasons, the court finds that the ALJ's findings, as they pertain to Dr. McClain's assessment of Rebecca, to be legally sufficient and supported by substantial evidence. Accordingly, it is hereby ORDERED as follows:

1. The R&R (Dkt. No. 28) is ADOPTED in full, subject only to the correction of a harmless clerical error (*see* n.4);

2. Plaintiff's objections (Dkt. No. 29) are OVERRULED;

3. Plaintiff's motion for summary judgment (Dkt. No. 9) is DENIED; and

4. The Commissioner's decision is AFFIRMED.

An appropriate judgment order will be entered.

Entered: September 22, 2025.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge

---

[7] Rebecca argues that the alleged errors in the evaluation process were prejudicial and claims that "[h]ad the opinion of Dr. McClain been properly evaluated, the opinion would have been found persuasive, leading to a finding that Plaintiff is unable to engage in substantial gainful activity." (Obj. to R&R 6.) However, the court observes that the medical report at issue ultimately concludes that Rebecca is not disabled. (McClain Med. Op. 46.) Although this determination appears to have been made by Dr. William Rutherford, who oversaw the physical portions of the assessment, while Dr. McClain was responsible for the mental portion, the court finds this detail noteworthy.